IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs October 27, 2004

**FARON DOUGLAS PIERCE v. STATE OF TENNESSEE**

**Direct Appeal from the Criminal Court for Knox County**
**No. 76292     Ray L. Jenkins, Judge**

**No. E2004-00372-CCA-R3-PC - Filed March 31, 2008**

Petitioner, Faron Douglas Pierce, appeals the post-conviction court's denial of his petition for post-conviction relief in which he alleged the ineffective assistance of counsel at trial when he was convicted of robbery. After a thorough review, we affirm the denial of post-conviction relief.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

J.C. MCLIN, J., delivered the opinion of the court, in which JERRY L. SMITH and ALAN E. GLENN, JJ., joined.

Albert J. Newman, Jr. (on appeal), and J. Liddell Kirk (at trial), Knoxville, Tennessee, for the appellant, Faron Douglas Pierce.

Paul G. Summers, Attorney General and Reporter; Renee W. Turner, Assistant Attorney General; Randall E. Nichols, District Attorney General; and Zane Scarlett, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**I. Procedural Background**

A Knox County jury convicted the petitioner of robbery, a Class C felony on November, 15, 2000, and he was sentenced to fifteen years in the Tennessee Department of Correction as a Range III persistent offender. On direct appeal, this Court affirmed the judgment of the trial court. State v. Faron Douglas Pierce, No. E2001-00437-CCA-R3-CD, 2002 WL 523453 (Tenn. Crim. App., at Knoxville, April 9, 2002). Following a direct appeal, appointed counsel withdrew without authorization from representation. No Rule 11 application for permission to appeal to the Tennessee Supreme Court was filed. On January 8, 2003, the petitioner filed a pro se petition for post-conviction relief and new counsel was appointed on February 26, 2003. An amended petition was filed alleging ineffective assistance of trial counsel. Specifically, the petitioner alleged that trial counsel was ineffective in failing to allow him to testify and call witnesses on the petitioner's behalf

at his sentencing hearing, and in failing to file a Rule 11 application for permission to appeal to the Tennessee Supreme Court.

This Court concluded on direct appeal that the petitioner was unilaterally deprived of his right to seek second-tier review pursuant to Rule 11 of the Tennessee Rules of Appellate Procedure and granted a delayed appeal to seek review by the Tennessee Supreme Court. Pursuant to Tennessee Supreme Court Rule 28, § 9(D)(2)(b)(I), the petitioner's remaining post-conviction issues were stayed pending the final disposition of the delayed appeal. The Tennessee Supreme Court denied the application on June 27, 2005. Following denial of certiorari, no further action has been taken by the petitioner. Nevertheless, we now proceed to dispose of the remaining issues.

## II. Facts

The facts underlying the petitioner's conviction were summarized on direct appeal as follows:

The victim, John Schober, testified that on October 22, 1998, he was working as the cashier at the Northshore Texaco in Knoxville. The victim testified that at about 7:30 p.m., defendant entered the store with another individual, co-defendant David C. McFalls. The two individuals walked to the back of the store and looked at products on the medicine aisle. One of the men held a package and addressed the clerk asking, "[d]oes this contain aspirin?" The victim put on his glasses, walked to the back of the store, and read the packet. He answered, "Yes" and returned to his position behind the counter at the front of the store. The two individuals returned to the front of the store, and the victim began to ring up their purchases. As the co-defendant stood in front of the counter, defendant came behind the counter and "sucker-punched" the victim, knocking him to the floor. Defendant tried to open the cash register but was unsuccessful because the victim locked the register just prior to the men entering the store. The victim testified that defendant stated, "[o]pen the M_____ F_____ drawer or I'll kill you," and the victim opened the drawer. The victim testified that defendant emptied the cash drawer and told the victim to "stay on the floor or else [defendant would kill the victim]." The two men fled the store.

Police recovered evidence from the scene, including a Tylenol container with defendant's fingerprints and a video from the store security camera operating at the time of the robbery. At a later date, the victim identified defendant in a photgraph [sic] lineup. The victim also identified defendant at trial and further testified after viewing the videotape at trial that the videotape was an accurate depiction of what happened the night of the robbery.

The victim testified that it was the co-defendant who actually brought the Tylenol container to the counter. The victim also stated that it was common for many

items in the store to be touched or picked up by different customers. On cross-examination, the victim testified that the most distinguishing characteristic he could recall about the individual who struck him was that the individual seemed to have no teeth. He testified that he gave a description of the individual to the police. He stated that he did not tell the police anything regarding the individual's facial hair. However, the photo he picked out was of an individual with facial hair. He finally stated that police did not ask any questions about other physical characteristics. On redirect, he testified that he picked out the photo right away, with no help, and that he did not know that the person he picked out in the photo would have fingerprints at the scene on the counter.

Eric Howard Tuck testified that he was at the Northshore Texaco on the night of the robbery. He testified that, as he entered the Texaco, he saw two men run past him, although he could not positively identify them.

Tim Schade testified that he is a senior evidence technician at the Knoxville Police Crime Lab. He testified that he examined the fingerprints lifted from the scene and that the fingerprints taken from the Tylenol container matched with defendant. It was a fourteen-point match, and the prints were "unquestionably" defendant's.

Ken Slagle testified that he is an investigator with the Knoxville City Police Department, where he has worked for thirty years. He testified that after the lab ascertained whose fingerprints were on the Tylenol container, he obtained a photo of defendant. He later interviewed the victim. He stated that the victim immediately identified defendant's photo. On cross-examination, Detective Slagle testified that he interviewed the victim at the crime scene, and the victim gave a description of the suspect who had struck him as being a white male, twenty to thirty years old, approximately five feet and six or seven inches tall, 140 to 150 pounds, with a mustache and beard, wearing a blue shirt and a bandana, and having no teeth.

Gary Price stated that he is a sergeant with the Knoxville City Police Organized Crime Unit. He stated that he arrested defendant. He stated that defendant had a missing tooth. Further, he stated that defendant denied the robbery.

Defense witness Kimberly Swiney testified that she was a friend of defendant. She testified that defendant stayed at her home during October because defendant's mother requested that Ms. Swiney care for defendant after he was seriously injured. She testified that defendant had a slight concussion, broken ribs, swollen eyes, and would have shortness of breath when walking. She stated that his physical injuries affected his ability to walk and move around, and that she never saw defendant run.

-3-

She stated that defendant's health improved after Halloween of 1998.

Defense witness David McFalls, who was originally charged as a co-defendant, testified that he pled guilty to robbery regarding his involvement with this case. He testified that he was one of two men involved in the incident but that defendant was not there and was not the other individual. On cross-examination, McFalls was asked if, after previously viewing the video of the robbery, he identified defendant to an assistant district attorney as being the other person on the security camera video. McFalls testified that the other person on the video "favored [defendant]." Over defendant's objection, the State was allowed to call the assistant district attorney who testified that McFalls, in fact, previously identified defendant as the other person on the security camera video.

At the conclusion of the evidence, the jury returned a verdict of guilty for the crime of robbery.

State v. Faron Douglas Pierce, No. E2001-00437-CCA-R3-2002 WL 523453 at *1-3 (Tenn. Crim. App., at Knoxville, April 9, 2002), *perm. app. denied* (Tenn. June 27, 2005).

### III. Post Conviction Hearing

At the post-conviction hearing on February 12, 2004, it was stipulated that on November 15, 2000, the petitioner was convicted of simple robbery and sentenced to fifteen years as a Range III offender. Petitioner requested to be heard on the following issues: (1) that petitioner was not allowed to testify at his sentencing hearing; (2) to call witnesses on his behalf; and (3) that trial counsel did not perfect petitioner's application to appeal to the Tennessee Supreme Court. A delayed appeal was granted as to the petitioner's third issue and his application was denied on June 27, 2005. We now address petitioner's remaining issues for review.

The evidence presented at the post-conviction hearing consisted of petitioner's testimony and that of trial counsel.

Petitioner testified that his trial counsel failed to advise him that the petitioner could testify at his sentencing hearing and have witnesses testify at sentencing on his behalf. Petitioner stated that he wanted some family members and friends to speak on his behalf and that their testimony may have kept him from getting the maximum sentence.

-4-

Petitioner further testified that he did not recall the trial judge asking him if he had anything he wanted to say before imposing sentence. Petitioner stated that he was not disputing that he was asked by the trial judge, but that he did not recall being asked.

On cross-examination, petitioner testified that he had mentioned to trial counsel that his sister wanted to be present and testify at his hearing. Further, petitioner stated that trial counsel stated that he did not think that was a good idea.

When asked on cross-examination what would the witnesses have said to the sentencing judge that would have made a difference, the petitioner stated as follows:

Defendant: Well, they would have told of my character, I'm sure.

The Assistant District Attorney proceeded to ask the following:

Assistant D.A.: Your character, which included the six prior felony convictions that you had?

Petitioner: I'm sure if you'd asked them that, they would probably would have. They wouldn't have lied.

Assistant D.A: Your character - - your character which would have told about the aggravated robbery conviction that you'd just gotten in June of 1999 over in Blount County?

Petitioner: Once again, I'm sure they would have if you'd of asked them.

Assistant D.A.: But - - but your family would have told the judge that that was your character?

Petitioner: No, not necessarily just that. I had mentioned to [trial counsel] about my sister wanting to be over here and testify at my hearing. He didn't think that was a good - - good thing. My sister and my family, yeah that's who I would have liked to have had over here to speak for me.

Trial counsel testified that his experience consisted of at least five criminal trials prior to this one and that he had been practicing law full-time since the end of 1996, after being licensed. He further testified that his previous trial before this one was an especially aggravated robbery case. He testified that he believed that he had discussed sentencing with the petitioner over the Christmas holidays prior to his hearing and that the petitioner had a "pretty realistic view" about what would occur at the sentencing hearing. Further, that to his recollection, petitioner did not want to say anything.

Trial counsel further testified that he did not believe that there was anything that any of the petitioner's family members could have said other than they did not want petitioner to go to jail or receive the maximum sentence. Counsel stated that family members would have been cross-examined regarding all of petitioner's prior convictions to their knowledge of his previous history. Trial counsel stated that the less emphasis placed on petitioner's prior convictions, the better at that point. Trial counsel stated that he asked the court not to give the maximum sentence and that the state relied on the enhancing factors that were filed and the evidence that was presented at trial. Further, counsel did not think there was anything that petitioner or any family member could have said that would have made a difference.

## IV. Analysis

On appeal, the only remaining issues being pursued by the petitioner are (1) that petitioner was not allowed to testify at his sentencing hearing and (2) that he was not given the opportunity to call character witnesses on his behalf during sentencing.

When a petitioner seeks post-conviction relief, he or she must establish his or her allegations by clear and convincing evidence. T.C.A. § 40-30-110(f). The trial court's application of the law to the facts is reviewed *de novo*, without a presumption of correctness. *Fields v. State*, 40 S.W. 3d 450, 458 (Tenn. 2001). A claim that counsel rendered ineffective assistance is a mixed question of fact and law and therefore also subject to *de novo* review. *Id.; State v. Burns,* 6 S.W. 3d 453, 461 (Tenn. 1999).

A petitioner seeking post-conviction relief on the basis of ineffective assistance of counsel, must establish that counsel's performance fell below "the range of competence demanded of attorneys in criminal cases." *Baxter v. Rose,* 523 S.W.2d 930, 936 (Tenn. 1975). In addition, he or she must show that counsel's ineffective performance actually adversely impacted the defense. *Strickland v. Washington,* 466 U.S. 668, 693, 104 S. Ct. 2052, 2067, 80 L. Ed. 2d 674 (1984). In reviewing counsel's performance, the distortions of hindsight must be avoided, and this Court will not second-guess counsel's decisions regarding trial strategies and tactics. *Hellard v. State,* 629 S.W. 2d 4, 9 (Tenn. 1982). A reviewing court, therefore, should not conclude that a particular act or omission by counsel is unreasonable merely because the strategy was unsuccessful. *Strickland,* 466 U.S. at 689, 104 S. Ct. at 2065. Rather, counsel's alleged errors should be judged from counsel's perspective at the point of time they were made in light of all the facts and circumstances at that time. *Id*. at 690, 104 S. Ct. at 2066.

Furthermore, "[w]hen a [post-conviction] petitioner contends that trial counsel failed to discover, interview, or present witnesses in support of his defense, these witnesses should be presented by the petitioner at the evidentiary hearing." *Black v. State,* 794 S.W. 2d 752, 757 (Tenn.

-6-

Crim. App. 1990). Generally, presenting such witnesses at the post-conviction hearing is the only way a petitioner can establish that "the failure to discover or interview a witness inured to his prejudice or . . . the failure to have a known witness present or call the witness to the stand resulted in the denial of critical evidence which inured to the prejudice of the petitioner." *Id.* Accordingly, a petitioner who establishes that trial counsel deficiently performed in failing to investigate or call witnesses is entitled to no relief "unless he can produce a material witness who (a) could have been found by a reasonable investigation and (b) would have testified favorably in support of his defense if called." *Id.* at 757-58.

A petitioner must satisfy both prongs of the *Strickland* test before he or she may prevail on a claim of ineffective assistance of counsel. *See Henley v. State,* 960 S.W. 2d 572, 580 (Tenn. 1997). That is, a petitioner must not only show that his counsel's performance fell below acceptable standards, but that such performance was prejudicial to the petitioner. *Id.* Failure to satisfy either prong will result in the denial of relief. *Id.* Accordingly, this Court need not address one of the components if the petitioner fails to establish the other. *Strickland,* 466 U.S. at 697, 104 S. Ct. at 2069.

The record in this case regarding the remaining issues supports the post-conviction court's determination that the petitioner failed to show ineffective assistance of counsel by clear and convincing evidence.

Although the petitioner testified that he was not made aware that he could have testified at his sentencing hearing or have witnesses testify on his behalf, this testimony is contradicted by the record and trial counsel.

At the sentencing hearing held on January 4, 2001, the trial court was specific regarding the petitioner's right to make a statement on his own behalf. Relevant portions of the sentencing colloquy are as follows:

. . . .

The Court: All right. Now, section 40-35-210 requires the court to permit the defendant to make a statement in his own behalf about the sentencing phase, and I'll hear him at this point if he wishes.

Trial Counsel: No, your Honor.

The Court: All right. All right, Mr. Pierce, please stand.

Defendant: (standing)

The Court: Is there anything further you would like to say?

Defendant: No.

-7-

Trial counsel testified at the post-conviction hearing stating that he was reluctant to have petitioner's prior convictions and history highlighted during the sentencing phase because he believed that doing so would not help the petitioner. Further, the record indicates that there was a discussion between petitioner and trial counsel regarding what would take place during sentencing. Trial counsel testified that to his knowledge, he discussed sentencing with the petitioner over the Christmas holidays before sentencing and that petitioner did not want to testify. Additionally, petitioner was asked by the trial judge at sentencing if he wanted to testify on his own behalf. Petitioner responded, "No". The fact that a particular strategy or tactical decision failed does not by itself establish ineffective assistance of counsel. *Goad v. State*, 938 S.W. 2d 363, 369 (Tenn. 1996).

Petitioner next argues that trial counsel was ineffective for failing to call witnesses to testify on his behalf at the sentencing hearing. The record indicates that trial counsel and petitioner had a discussion regarding calling witnesses and the possibility of their being cross-examined regarding his prior convictions. Petitioner gives no indication as to what the witnesses would have testified, or what specific testimony may have resulted in a lesser sentence. The petitioner had an obligation to call his witnesses and document this testimony at the post-conviction hearing in order to establish the prejudice requirement of *Strickland*.

Because the petitioner failed to call the witnesses and failed to meet his burden of demonstrating prejudice, he must be denied relief.

## CONCLUSION

The petitioner has failed to meet his burden of proof regarding his claim of ineffective assistance of counsel. Therefore, the judgment of the post-conviction court is affirmed.

_____
J.C. McLIN, JUDGE